# UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF ARKANSAS
### LITTLE ROCK DIVISION

**DAVID STEBBINS**                                                    **PLAINTIFF**

   **VS**                    **CASE NO. 4:14-cv-227-KGB**

**STATE OF ARKANSAS**                                         **DEFENDANTS**
**MIKE BEEBE, in his official capacity**
**as Governor of Arkansas**

## BRIEF IN SUPPORT OF SECOND MOTION FOR SANCTIONS

Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following Brief in

Support of his Motion for the Defendant to be sanctioned under Fed. R. Civ. P. 11 for various

violations, as well as Fed.R.Civ.P. 11(b)(1) and 28 USC § 1927 for deliberately delaying

proceedings by filing a Motion to Dismiss they plainly knew to lack merit.

## BACKGROUND

1.      On April 10, 2014, Plaintiff filed a Complaint against the State of Arkansas and Governor

Beebe, accusing the State of initiating and prosecuting a criminal proceeding for the express

purpose of persecuting Plaintiff for his litigation practices.

2.      On June 3, 2014, the Defendants appeared in the case and moved to dismiss the

Complaint "in its entirety with prejudice."

3.       Their reason for requesting this relief was that, apparently, Plaintiff did not include as

much detail as they would like in his Complaint.  Specifically, they complain that …

    (a)      Plaintiff failed to allege an adverse action that the State – rather than the County –

committed against Plaintiff.

    (b)      Plaintiff failed to allege that he engaged in a protected activity, simply because he did

not state his previous litigation history (which *should* have been public record) with

specificity.

    (c)    That Plaintiff failed to allege the element of causal connection.

4.    On June 12, 2014, Plaintiff filed with the Court a Response in Opposition (Doc. ##) to this Motion to Dismiss, pointing out the following issues:

    (a)    Plaintiff has indeed provided the details the Defendants say were lacking.

    (b)    Overwhelming precedent unequivocally states that the Defendants are not entitled to dismissal of the Complaint "in its entirety with prejudice" when any error that may or may not exist can easily be cured simply by amending the Complaint.

5.    The Defendants do not offer any argument whatsoever – let alone a nonfrivolous one – for why the overwhelming precedent spoken of in Paragraph 4(b) of this Brief should not hold.

## APPLICABLE LAW AND STANDARD

6.    "By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery" See Fed.R.Civ.P. 11(b)(1)-(3).

7.    " Rule 11 makes sanctions mandatory when a violation of the Rule occurs…" See *O'Connell v. Champion Intern. Corp.*, 812 F. 2d 393, 395 (8th Cir. 1987).

8.      "...but whether a violation has occurred is a matter for the court to determine, and this

determination involves mat-ters of judgment and degree." See *id*.

9.      This, of course, begs the question … what constitutes an abuse of discretion?

10.     This question is answered by the precedent of *Kern v. TXO Production Corp.*, 738 F.2d

968, 970 (8th Cir. 1984), which states, in pertinent part, the following:

> "That is, when we say that a decision is discretionary, or that a district court has
> discretion to grant or deny a motion, we do not mean that the district court may do
> whatever pleases it. The phrase means instead that the court has a range of choice,
> and that its decision will not be disturbed as long as it stays within that range and
> is not influenced by any mistake of law. An abuse of discretion, on the other hand,
> can occur in three principal ways: when a relevant factor that should have been
> given significant weight is not considered; when an irrelevant or improper factor
> is considered and given significant weight; and when all proper factors, and no
> improper ones, are considered, but the court, in weighing those factors, commits a
> clear error of judgment."

11.     With this precedent in mind, we turn back to the *O'Connell* precedent, which states,

that,in regards to determining whether or not a violation of Rule 11 has occurred, "[t]he issue is

whether the person who signed the pleading conducted a reasonable inquiry into the facts and

law supporting the pleading." See *O'Connell* at 395.

12.     With the law now established, we now turn to the merits.

## ARGUMENT AND DISCUSSION

13.     For the reasons set forth below, the Defendants unquestionably committed five (5)

distinct violations of Rule 11 (one violation of Rule 11(b)(2), three violations of Rule 11(b)(3),

and one violation of Rule 11(b)(1)), and should suffer five (5) independent sanctions for each of

their violations.

### Violation No. 1: Failure to make reasonable inquiry into
### poper treatment of vague Complaint.

14.     The Defendants moved to dismiss the Complaint "in its entirety with prejudice," despite

overwhelming case law clearly stating that mere technical deficiciencies do not constitute such an extreme remedy.

15.     The Defendants could not possibly have complied with Fed.R.Civ.P. 11(b)(2) and still, at the same time, believed they were entitled to relief.  They either have failed to inquire into the law on the matter, or simply did not care.

16.     Overwhelming binding precedent unequivocally states that, when a Complaint fails to give a satisfactory amount of detail, the proper remedy is not dismissal of the Complaint "in its entirety with prejudice," but rather, to amend the complaint.

17.     Simply put, the Defendant's motion to dismiss simply is not backed by existing law.

18.     The Defendants offer no argument whatsoever – let alone a nonfrivolous one – for extending, modifying, or reversing existing law or for establishing new law.

19.     ¶¶ 17 and 18, taken together, amount to an undeniable violation of Fed.R.Civ.P. 11(b)(2).

    (a)     … which forces the to deem the Defendant to be in violation of Rule 11, beyond this Court's discretion to contest.  See ¶ 10 of this Brief.

    (b)     … which means that this Court MUST sanction the Defendant.  See ¶ 7 of this Brief.

### Violations Nos. 2:  Frivolous Complaint of
### Lack of Allegation of Protected Activity

20.     Next, the Defendants make patently frivolous statements about allegations which the Complaint apparently lacks.

21.     Among these apparent deficiencies are …

    (a)     Plaintiff failed to allege an adverse action that the State – rather than the County – committed against Plaintiff.

    (b)     Plaintiff failed to allege that he engaged in a protected activity, simply because he did

not state his previous litigation history (which should have been public record) with specificity.

(c)    That Plaintiff failed to allege the element of causal connection.

22.    Even a brief review of the Complaint would show that Plaintiff did indeed allege that he engaged in statutorily protected activity.

(a)    Paragraph #8: "Plaintiff has filed numerous lawsuits in the past."

(b)    Paragraph #9(a): "Almost all of these lawsuits were either for discrimination in violation of the Americans with Disabilities Act (specifically, failure to provide reasonable accommodations for Plaintiff's Asperger Syndrome), or for Retaliation in violation of Section 503 of the Americans with Disabilities Act, which places them squarely within the protection of Section 503 of the Americans with Disabilities Act.

(c)    Paragraph #9(b): "Although the number of lawsuits Plaintiff has filed were large, none of them were frivolous.

23.    It seems that the Defendants' primary whine and moan is based, not on Plaintiff's failure to allege that he engaged in any statutorily protected activity, but rather, that Plaintiff did not go above and beyond the call of duty and state each and every lawsuit he filed.

24.    News flash:  Plaintiff's litigation history is PUBLIC RECORD!  If the Defendants want to know precisely what lawsuits he has filed, perhaps they could – oh, I don't know – LOOK THEM UP?  Is that really so hard?

25.    See, this is why it is a violation of Rule 11(b)(3):  The Defendants clearly did not conduct "a reasonable inquiry into the facts," which – as  established by ¶ 11 of this brief – is required in order to avoid sanctions.

(a)    … which forces the to deem the Defendant to be in violation of Rule 11, beyond this

Court's discretion to contest.  See ¶ 10 of this Brief.

(b)     … which means that this Court MUST sanction the Defendant.  See ¶ 7 of this Brief.

### Violations Nos. 3:  Frivolous Complaint of<br>Lack of Allegation of Adverse Action

26.     Even a brief review of the Complaint (Doc. 2) would show that Plaintiff did indeed allege that it was the State of Arkansas – not just[1] Boone County – who engaged in an adverse action against Plaintiff.

27.     In Paragraph #11 of the Complaint, Plaintiff stated the following:

> "[O]n November 24, 2011, Plaintiff was arrested for domestic battery after his father – who was in cahoots with the State – framed him for the crime. This was not done because the State believed him guilty of domestic battery, but rather, to give Plaintiff a taste of incarceration, and break his spirit, so that the State could use the threat of additional incarceration in order to coerce Plaintiff into dismissing his lawsuits."

28.     Also, in Paragraph #53 of the Complaint: "The State is liable for this injury because they knew of this particular jail guards' personal vendetta against Plaintiff and deliberately threw Plaintiff to the wolves."

29.     Notice how Plaintiff, in those paragraph, stated …

(a)     … that Plaintiff's father was in cahoots with the *STATE*, not simply the County.

(b)     … that the *STATE* (not the County) did not care about any domestic battery dispute.

(c)     … that the *STATE* (not the County) wanted to give Plaintiff a taste of incarceration.

(d)     … that the *STATE* (not the County) used the threat of additional incarceration to coerce Plaintiff into not filing any more lawsuits.

(e)     … that the *STATE* (not the County) threw Plaintiff to the wolves.

30.     In addition to this, in the Complaint, Plaintiff made the following allegations:

---

1  It is important to understand that, yes, Boone County engaged in the adverse action of arresting Plaintiff. However, that is not the ONLY adverse action in question

    (a)    Paragraph #73: "Prosecuting Attorney Wes Bradford – representing the interests of the State of Arkansas – set out to coerce Plaintiff into dismissing all his lawsuits, knowing full well that his actions were patently illegal."

    (b)    Paragraph #78(a): "Wes Bradford then – and only then, after literally months of being a rock on the matter – finally agreed to modify some portion of his demands that Plaintiff dismiss his lawsuits."

    (c)    Paragraph #78(c): "At the oral hearing ... Bradford (who, it is worth noting, repeatedly badgered Plaintiff) completely lied to the state judge and stated that he had completely revoked the demand to dismiss lawsuits, altogether."

31.    These allegations are clearly sufficient to implicate the State in the conspiracy, since it is well established precedent that parties (and the State is no different) are responsible for the actions of their counsel. "A party chooses counsel at his or her peril. Counsel's disregard of his or her professional responsibilities can lead to extinction of his or her client's claims. It is a well-established principle that a party is responsible for the actions and conduct of his or her counsel." See *Boogaerts v. Bank of Bradley*, 961 F. 2d 765, 768 (8th Cir. 1992); *Comiskey v. JFTJ CORP.*, 989 F. 2d 1007, 1010 (8th Cir. 1993); *Link v. Wabash R. Co.*, 370 US 626 (1962).

32.    As a result, the Defendants are either lying when they stated that they conducted "a thorough review of the Complaint," or they are lying when they stated that Plaintiff never alleged an adverse action which the State would be responsible for.

33.    Either are sufficient to establish a violation of Fed.R.Civ.P. 11(b)(3).

    (a)    ... which forces the to deem the Defendant to be in violation of Rule 11, beyond this Court's discretion to contest. See ¶ 10 of this Brief.

    (b)    ... which means that this Court MUST sanction the Defendant. See ¶ 7 of this Brief.

## Violations Nos. 4: Frivolous Complaint of
## Lack of Allegation of Causal Connection

34.    Once again, even a brief review of the Complaint would show that Plaintiff did indeed

allege that the adverse action was caused by the protected activity.

35.    Indeed, this is the easiest of the allegations to spot, if you were to actually *read* the

Complaint!

36.    The allegations are found here:

(a)    Paragraph #10: "Because of their lack of frivolousness, the ***State of Arkansas***

had no chance whatsoever of convicting Plaintiff of the crime of malicious prosecution1, but

since the lawsuits Plaintiff had filed were unpopular with the government, they decided to

persecute Plaintiff without giving him a fair trial (since it was a choice between that and

simply respecting Plaintiff's legal right to court access, they apparently decided that the latter

option was 100% out of the question)."

(b)    Paragraph #12: "[O]nce the issue of lawsuits was no longer part of the case, the ***State***

quickly agreed to dismiss the criminal proceedings, since the proceedings were not about any

domestic battery dispute and they never were."

37.    Therefore, Plaintiff has clearly alleged that, were it not for the lawsuits, prosecuting

attorney Wes Bradford would not have participated any conspiracy to have Plaintiff arrested so

he could extort Plaintiff.

38.    Because the Defendants state that Plaintiff did not make these allegations, when he

clearly did, this clearly constitutes a violation of Fed.R.Civ.P. 11(b)(3).

(a)    ... which forces the to deem the Defendant to be in violation of Rule 11, beyond this

Court's discretion to contest. See ¶ 10 of this Brief.

(b)    … which means that this Court MUST sanction the Defendant.  See ¶ 7 of this Brief.

**Violation No. 5:  Purposefully trying to delay Plaintiff's justice.**

39.    Last but not least, we now turn to the violation of Fed.R.Civ.P. 11(b)(1). This one will, understandably, be a bit trickier to establish than the previous for, since "[m]otives are complex and difficult to prove." See *United States v. Goodwin*, 457 US 368, 373 (1982).

40.    Defendants have filed a Motion to Dismiss, requested frivolous relief and basing their claims facts that are patently untrue.  They *claim* to have made "a thorough review of the Complaint,"[2] but their actions clearly show otherwise.

41.    The Defendants cannot proceed on this action unless the Motion to Dismiss is denied. This means that, for as long as the frivolous Motion is pending, the Defendants have effectively earned themselves a stay of proceedings.

42.    This delays their requirement to have to compensate Plaintiff for his injuries.

43.    Think of it this way:

(a)    Let's assume, for the purposes of example, that the case, once the Answer is filed, would have lasted ten (10) months, assuming everything else – except for the date the Answer is filed – to be equal.

(b)    The Answer was supposed to be due on June 6, 2014.

(c)    If the Answer were filed when it was supposed to – instead of tthis frivolous Motion to Dismiss – then, according to the example given in Sub-Paragraph (a), Plaintiff would have had his judgment in his favor on April 6, 2015.

(d)    However, as of the time fo this writing, Plaintiff's judgment has been pushed back to, at the very least, April 17, 2014, and that's assuming that the Defendants, upon receiving this

---

2    Starting on Page 9 of the Brief.

Motion on PACER, instantly file their answer in order to move this case along.

44.    Not only has the Defendant's patently frivolous motion *caused* the delay spken of in Paragraphs #41 – 43 of this Brief, but it is extremely difficult to believe that their actions were not done with the specific intent of causing this delay.

45.    Here are some reasons why the Court should make this finding:

### REASON NO. 1: THE DEFENDANT'S MOTIVE TO DELAY

46.    Plaintiff has made some very damning accusations against the Defendant.

(a)    He alleges what is, effectively, SLAPP[3] criminal proceedings initiated and prosecuting in the State's name, by the State's counsel.

(b)    In Paragraph #73, Plaintiff references a *written confession* on the part of the State's counsel that he intends to coerce Plaintiff into ceasing and desisting his lawsuit practices.

(c)    The prosecutor's actions and conduct during the criminal proceedings clearly imply that he never once cared about the domestic battery.

47.    As you can see, these accusations probably lead the Defendants to believe that Plaintiff's claims may have merit. After all, they *MUST* have merit if Plaintiff has a ***WRITTEN CONFESSION*** in his possession, and why would Plaintiff speak of written confessions when he knows he does not have any? Especially when, as evidenced by his filing of this motion, he is clearly well aware of the provisions of Fed.R.Civ.P. 11(b)(3).

48.    Thus, they clearly have a *motive* to delay these proceedings: Delaying liability that is otherwise inevitable. If Plaintiff did not have such an airtight case (for example, if Bradford's confession of vindictiveness was in-person only and off-the-record, making it significantly more

---

3    "SLAPP" means "Strategic Lawsuit Against Public Participation," It refers to court proceedings that are intended to censor, intimidate, and silence critics by burdening them with the cost of a legal defense until they abandon their criticism or opposition. While the word "lawsuit" in the name may suggest that these cases are exclusively civil in nature, that's only because those are, statistically, the most common of these types of cases where the victim thereof has some legal remedy that is not barred by prosecutorial immunity.

difficult to prove), the motive to delay the proceedings would not be nearly as strong.

49.      Of course, the mere existence of a motive, by itself, does not prove that they acted

pursuant to this motive.  That is why we must turn to additional evidence – specifically, the

precise *actions* of the Defense Counsel, and what she did, and didn't, do – to help ascertain what

actually was the driving force behind the Motion.  Was it done to buy her clients some time and

avoid the liability she knows is inevitable?  Or did she truly, and honestly, misunderstand the

Complaint, and based her Motion to Dismiss based on those misunderstandings?

50.      That is where things get a little trickier, but Plaintiff believes he can still manage.

## REASON NO. 2:  THE DEFENDANT'S CONSPICUOUS COMPLAINT
## ABOUT LACK OF SPECIFICATION OF LITIGATION HISTORY

51.      Notice how one of the grounds upon which the Defendants base their Motion to Dismiss

was that "The Complaint did not identify the alleged 'numerous' ADA lawsuits or against whom

they were brought."

52.      Plaintiff argues against this ground, arguing, among other things, that Plaintiff's litigation

history is *public record*, which means that there should be no NEED for Plaintiff to specificy his

lawsuits. Plaintiff argues that the Defendant could have easily looked up Plaintiff's litigation

history if they were curious.

53.      But here's a good question;  What honestly makes you think they *haven't* done that?

54.      It is supposed to be standard practice for an attorney to always look up the public records

and criminal histories of whatever party they are opposing, just to see if there is any dirt they

could dig up on the opposing party.

55.      There are certain things attorneys just do at certain stages of the litigation, just because

you are supposed to do them.

(a)     When filing an Answer, a defense attorney is supposed to generally deny all claims, just for the purpose of pinning the burden of proof on the plaintiff.

(b)     During the initial discovery, you are supposed to place interrogatories and requests for production of documents for the opposing party to produce all evidence, and list all witnesses, they intend to introduce in their support for that case.  Although this *seems* redundant of the initial disclosures required under Fed.R.Civ.P. 26(a)(1), attorneys nevertheless do this, simply because it is standard.

(c)     When the Plaintiff has presented all of his evidence, the Defendants are supposed to file a Motion for Directed Verdict, even if the Plaintiff has provided enough evidence to support a verdict in his favor, simply because they are required to do this in order to preserve it for appeal.

(d)     They must also file this motion at the close of evidence, in order to preserve the issue for appeal.

56.     Another thing that an attorney is supposed to routinely do is look up whatever public records they can find to dig up dirt on their adversaries.

57.     Although an attorney is not *required*, per se, to do these things, that does NOT mean that their reason for not doing them is irrelevant to any proceeding.  Rather, not being "required" to do something merely means that the lawyer's failure to do it does not, by itself, amount to a stand-alone violation.

58.     Just because it is legal to do something does not mean that it cannot be used as evidence of anything else.  Technically, it is not "illegal" per se, for Plaintiff to have streaks of blood on his wall.  Maybe he just likes a macabre atmosphere, kind of like The Adams Family.  But, that does not mean that the police cannot use that as evidence of something else that IS illegal.

59.     Likewise, just because Defense Counsel is not technically "required" to look up Plaintiff's public records does NOT eliminate the question of … why didn't she do so, as a question of fact?  Why didn't Regina Haralson – who works for the State and, by nature of her position, is presumed to be among the very best of his chosen profession – not take this very common, routine, and standard step towards setting up her client's defense?  For that matter, why would the State – of all people – employ an attorney who does such a sub-par job?

60.     The only way you could answer these questions in a way that makes even a little sense is if you accept that … she did indeed look up Plaintiff's public records.

61.     And that is where it gets good:  She looked up Plaintiff's public records, looked up the facts alleged in this case, saw that everything Plaintiff said in his Complaint was indeed true, realized to herself "Oh crap … if I don't do something, and fast, my clients are SOL," and proceeded to make stuff up in the hopes that neither the Court nor the Plaintiff would catch onto what she was doing until it was too late.

62.     If either the Court, or Haralson herself, has a better explanation for her apparent failure to perform such a routine task, then by all means, let's hear it.  Until then, however, Plaintiff asserts that this investigation did indeed happen (as is standard with attorneys), and her failure to mention it – as well as her assertions in the Motion to Dismiss that these specifications were necessary – were done out of an attempt to prevent the liability she plainly knows her clients to justly deserve.

## REASON NO. 3:  LAW OF CUMULATIVE PROBABILITIES

63.     The Defendants have already engaged in four violations of Rule 11, even without having to ascertain motive.  See ¶¶ 14 – 38.

64.     While any one of these violations, standing by themselves, may hold the reasonable

possibility that these violations are mere bumbling mistakes or human error, the possibility of

ALL FOUR of them happening, when the Defense Counsel is supposed to be among the best in

the entire state, and when – as established in ¶¶ 46–48 of this Brief – they have such a concrete

motive, the odds of all of this happening at one time is astronomical.

65.      Yes, anyone can make a mistake.  But, to make four mistakes in rapid succession, when

one has the level of training that Regina Haralson – by nature of her being licensed to practice

law – is presumed to have, and with such a clear-cut motive as the Defendants in this case have,

is evidence of intent.

66.      This is called the "Law of Compound Probabilities," and it states that, whenever an event

has a $1$ $in$ $x$ chance of ending with a particular, "successful" result, and that even happens $y$

times, the odds of all instances of the event resulting in a success are $1/(x^\wedge y)$, or "one in x to the y

power."

67.      Here is an example of the Law of Compound Probabilities being put into play in a way

that a judge or lawyer can appreciate:

    (a)      Suppose there's ten serial killings across the nation.

    (b)      On the 10th killing, a police officer - having heard of the previous nine killings -

    takes it upon himself to search the customer databases of nearby hotels.

    (c)      He then procures the same records of hotels within 50 miles of each of the previous

    nine killings, and runs them through a computer to see if there are any matches.

    (d)      Lo and behold, there is a match!  Turns out, this guy named Johnny Samuel

    Rodrigues the Third (Plaintiff just made that name up, sincet his is a hypothetical example) is

    known to have …

        i.      rented nine hotel rooms, …

ii.     all within three miles of their corresponding murders, and ...

iii.    all nine stays were ended on the dates the autopsies show the murder to have

happened.

(e)     While any one of those, standing by themselves, could be handwaived as coincidence,

ten in a row is going to entitle the authorities to a warrant to the man's arrest.  Or at the very

least, a warrant to take the man's DNA.

68.     Here, Law of Compound Probabilities dictates that, if we are to assume, for a moment,

that any one of the aforementioned violations carries with it a 10% chance of being a good faith,

honest mistake of human error, the odds of two of these violations beng unintentional are

reduced to a mere 1%.

69.     Then, the odds of three of these four violations being unintentional are reduced to 1 in

1,000.  This alone would convince most courts that a person did these things on purpose.

70.     But, when you consider all four of these together, the odds of the Defendants acting in

good faith go from "highly unlikely" to "stupidly unlikely."  Unlikely at a level that insults out

intelligence.

71.     Specifically, the odds are reduced to an astronomical 1 in 10,000.

72.     And that is assuming that each violation carries with it a consistent odds of it being in

good faith.  A concrete motive reduces the odds of any one of them being in good faith, and as

Plaintiff previously pointed out ¶¶ 51-62 of this Brief, the odds of that one specific violation

being in good faith is significantly smaller than the other violations being in good faith.

73.     So, really, when you take into consideration the *totality* of the circumstances, you realize

that it is no exaggeration to say that the true odds of the Motion to Dismiss – in its entirety and

under all relevant circumstances – being in good faith are around one in a million.

74.    For all of these reasons and more, the Court should make the finding that the Defendant's

Motion to Dismiss was filed for the sole purpose of delaying Plaintiff's compensation for his

injuries, as described in ¶¶ 40 – 44.

    (a)    … which forces the to deem the Defendant to be in violation of Rule 11, beyond this

Court's discretion to contest.  See ¶ 10 of this Brief.

    (b)    … which means that this Court MUST sanction the Defendant.  See ¶ 7 of this Brief.

**What sanctions should ensue?**

75.    With the five violations of Rule 11 finally established, we now turn our attention to the

specific type of sanctions that should attach.

<u>APPROPRIATE SANCTION FOR VIOLATION #5</u>

76.    Now, for Violation #5 (see ¶¶ 39 – 74 of this Brief), the specific sanctions have already

been ordained by statute.  See 28 USC § 1927:

> "Any attorney or other person admitted to conduct cases in any court of the
> United States or any Territory thereof who so multiplies the proceedings in any
> case unreasonably and vexatiously may be required by the court to satisfy
> personally the excess costs, expenses, and attorneys' fees reasonably incurred
> because of such conduct."

77.    Plaintiff also asks that the Defendants, the State of Arkansas and Governor Beebe, also be

jointly responsible for satisfying this sanction, since they are presumed to be acting through their

counsel.  See ¶ 31 of this Brief.

78.    This, of course, begs the question … how much is the delay worth?

79.    Plaintiff asserts that the delay should be "worth" the postjudgment interest that Plaintiff

would have received had the delay not happened.

80.    What Plaintiff means by that is this:

    (a)    We can assume that postjudgment interest would begin to pile onto a judgment the

date that judgment is entered, correct?

(b)     So, if the Defendant's Motion to Dismiss has delayed the entry of Plaintiff's judgment by two weeks (as established in ¶ 43 of this Brief), then it stands to reason that they have also cost Plaintiff two weeks worth of postjudgment interest.

(c)     Plaintiff is requesting damages of $2,505,627,757,440.

(d)     In federal courts, postjudgment interest on civil cases is calculated based on the Federal Reserve Discount Rate on the week of the event which triggers the interest.  See 28 USC § 1961.

(e)     Normally, the "even which triggers the interest" is the entry of judgment.  However, we have no way of knowing, so long in advance, what the Federal Reserve Discount Rate is going to be for that time period.

(f)     To compensate for this, Plaintiff believes tha the "even which triggers the interest" should also be the event which triggers the *sanction*.

81.     The delay should begin on June 6, 2014 (since this is the day the Answer would normally have been due) and should end the day the Answer is filed.

82.     Assuming that the Court accepts the means of determining the interest rate suggested in ¶ 79(f) of this Brief, then the correct rate would be 0.10%.  See Exhibits A and B, taken together.

83.     This means that the amount of interest the Defendants are causing a delay in the accumulation of is $2,505,627,757.44 per annum (because the rate is 0.10%, it is a simple matter of taking the damages and dividing them by 1,000).

84.     This means that the sanction for Violation #5 (as discussed in ¶¶ 39 – 74 of this Brief) should be $6,864,733.58 for each day, starting from June 6, 2014, that the Defendants do not file their Answer.

85.    This Motion will be likely be uploaded to PACER on June 17, 2014. If the Defendants, seeing this Motion, were to immediately correct their behavior and file their Answer to Complaint by the end of that day, they can reduce the worth of their delay to a minimum of 7 days.

86.    Therefore, Plaintiff's suggested sanction is a minimum of $48,053,135.06, plus an additional $6,864,733.58 for each day that the Answer to Complaint is not filed.

87.    Is this a lot of money? Sure it is. Especially if it goes up by $6.86 million per day.

(a)    But, the sanction needs to be severe. After all, the point of sanctioning a party under Rule 11 is to deter future conduct. To accomplish his goal, the sanction has to be something the Defendants consider to be excessive. If the Defendants believe the sanction is reasonable, they have not been very discouraged. Rather, the Defendants are likely to believe that the worst that can happen is a slap-on-the-wrist.

(b)    Besides, the Defendants have this kind of money in spades. They are the STATE OF ARKANSAS, for God's sake! There is NOTHING they cannot afford!

(c)    In fact, the Court can take judicial notice that, in Fiscal Year 2014, the State of Arkansas had a budget surplus of nine billion dollars. See Exhibit C.

(d)    So, to say that this sanction is unduly harsh on a party so financially well-off that even Bill Gates would be jealous is laughable.

(e)    For that matter, while the requested sanctions may be large, keep in mind ... that is what Plaintiff suffered. The damages in the Complaint were also massive, but the Court allowed Plaintiff to proceed on those damages, simply because the mere fact that they were massive does not matter, so long as Plaintiff can prove the Defendants were liable for them. Plaintiff referred to this doctrine in his Complaint: The Eggshell Skull Rule. A similar

theory applies here; massive as they may be, that is what Plaintiff has suffered as a direct result of the Defendants' delaying the proceedings as a result of this case-stopping issue.

(f)     Besides, keep in mind that there are two laws that Plaintiff is invoking in this motion: Fed.R.Civ.P.11 and 28 USC § 1927. While the former states that the sanctions should be limited only to what suffices to deter this type of conduct (see Rule 11(c)(4)), § 1927 simply states that an attorney committing a violation thereof should "be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct," and providing no upper limit except what the opposing party suffered. If the opposing party suffered a delay in justice, he should be compensated for his delay in justice.

(g)     Therefore, these sanctions, massive as they may be, are indeed warranted.

APPROPRIATE SANCTION FOR VIOLATION #1

88.     Just to refresh the Court's memory, the violation being discussed here is where the Defendants alleged that a mere lack of detail in the Complaint – which could easily be cured by amendment – is grounds for dismissal of the Complaint "in its entirety with prejudice," despite the overwhelming case law they could not possibly have missed had they complied with Fed.R.Civ.P. 11(b)(2).

89.     Now, with this violation, identifying a sanction to suggest is a little bit trickier, since Fed.R.Civ.P. 11(c)(5)(A) specifically forbids monetary sanctions for violations of this sort.

90.     However, just because monetary sanctions are out of the question does not mean the Court can simply skip this section. The Court still MUST sanction the Defendants for this violation; see ¶ 7 of this Brief.

91.     Plaintiff suggests a sanction along the lines of Fed.R.Civ.P. 37(b)(2)(A)(i)-(ii).

Specifically, the Defendants could be prohibited from opposing, contesting, or litigating that any of Plaintiff's lawsuits were ever filed in bad faith, and that the good faith alleged in ¶ 9(b) of the Complaint be taken as established.

92.     This sanction is not entirely absurd if you think about it.

93.     First of all, it is the one element of a retaliation claim that the Defendants do not accuse Plaintiff of failing to allege.  Under Fed.R.Civ.P. 8(b)(6), this would normally mean that the truth of ¶ 9(b) of the Complaint be taken as admitted.

94.     Secondly, even if we were to assume, for the sake of argument here, that the Defendants were able to convince a jury that at least one of Plaintiff's lawsuits was frivolous, this still begs the question … why did the State (acting through Wes Bradford; remember ¶ 31 of this Brief) go under the table to persecute Plaintiff?  Why not simply charge Plaintiff – not with domestic battery – but with malicious prosecution, under Ark. Code Ann. § 5-53-131, putting the allegedly frivolous lawsuits front and center, and affording Plaintiff the benefits of full due process (including, but not limited to, appointed counsel, full discovery, and a jury of his peers).

95.     See, the fact that Bradford prosecuted a domestic battery charge, and did that with ANY ulterior motives whatsoever, the mere fact that something – anything – that he was doing in his official capacity, was hidden from public, is in and of itself a crime of moral turpitude that calls into question the populace's faith in their government.

96.     Thus, even if the Defendants could argue that Plaintiff's lawsuits were frivolous and deserving of punishment, the fact that Bradford went under the table to persecute them should still entitle Plaintiff to relief in this case.

97.     Frankly, Plaintiff believes that the only reason the requirement exists in the first place that a Plaintiff in a retaliation case "first demonstrate that he had a good faith reasonable belief that

the alleged retaliator was engaging in discriminatory activity" was never intended for use in ADA Title II cases. Plaintiff believes that this requirement was put in place to protect *private* employers and *privately*-owned places of public accommodation. These people often have no choice but to engage in self-help adverse actions (such as firing a worker) with informal (if any) proceedings ... because they are not sovereign, and thus have no law enforcement powers.

98.     But, with Title II of the ADA (and retaliation thereof), there is simply no excuse. The mere fact that they hid behind the shield of a pretextual domestic battery dispute should be enough for the Court to have no pity for them.

99.     Thus, if the Court were to accept this suggested sanction, it would not heavily prejudice the Defendants. It's not like Plaintiff is asking the Court to order that the element of "causal connection" be established by judicial decree (if that were the case, you might as well just issue a sanction of default[4]). Rather, it seems that, by taking this suggestion, we would simply be saving ourselves the trouble of litigating something that *should* be redundant of the Defendant's ulterior motives to begin with. Everybody wins.

## APPROPRIATE SANCTIONS FOR VIOLATIONS #2-4

100.    We now finally turn to the appropriate sanctions for the Defendants' three violations of Fed.R.Civ.P. 11(b)(3).

101.    Although there is no rule against imposing monetary sanctions for these violations, in the event that the Court chooses to impose the sanction suggested in ¶ 86 of this Brief, then Plaintiff will already be fully compensated for the loss that the Defendants caused him.

102.    Of course, if the Court declines to enter that sanction in response to Violation #5, then Plaintiff requests this sanction here, since it was these violations which the Defendants used to

---

4   and that is not allowed unless there's some repitition to the Defendants' conduct; see *Hunt v. City of Minneapolis, Minn.*, 203 F. 3d 524, 527 (8th Cir. 2000)

give themselves even a theoretical basis upon which to file the Motion to Dismiss.

103.    However, Plaintiff wishses to remind the court that THIS particular sanction is just as mandatory as the Court's duty to impose sanctions in the first instance, in all other violations. The sanction requested in ¶ 86 is flatly prescribed by statute, under 28 USC § 1927.

104.    But, if the Court decides to issue that sanction in response to Violation #5, then Plaintiff suggests that the Court order the Defendants to pay a fine into court.  Plaintiff will (assuming ¶ 101) have already been compensated.  So now, it should be the federal taxpayers' turn to be compensated.

105.    Because unlike the Defendants (and their prosecuting attorneys), Plaintiff actually has the interests of the taxpayers in mind.  Plaintiff actually cares about the public good and the general welfare.

## CONCLUSION

106.    To wrap up this Brief, let us recap the points:

(a)    When a violation of Rule 11 occurs, sanctions are mandatory.

(b)    Although the Court has discretion to determine if a violation of Rule 11 has occurred, that discretion does not entitle the Court to do whatever it wants.  The issue is whether the Defendants have conducted a reasonable inquiry into the facts and law concerning the matter.

(c)    Thus, the Court should sanction the Defendants by not allowing them to oppose or litigate that Plaintiff's lawsuits were constitute "statutorily protected activity."

(d)    The Defendants frivolously state that Plaintiff has failed to allege three different elements of the tort of ADA retaliation, even though Plaintiff was able to provide – and even quote word for word – a total of ten[5] excerpts from the Complaint which allege these

---

5   See ¶¶ 22, 27, 28, 30, and 36 of this Brief.

elements. Nobody who conducts "a thorough review of the Complaint," like the Defendants claim to have done, could possibly believe that these elements were not alleged.

(e)     Thus, they should be made to compensate the taxpayers for wasting the Court's resources having to deny this Motion to Dismiss.

(f)     In light of all the circumstances, the odds of the Defendants NOT filing the Motion to Dismiss for the sole purpose of delaying Plaintiff's compensation for his injuries is one in a million.

(g)     Thus, Plaintiff is statutorily entitled – under 28 USC § 1927 – to be compensated for his injuries in the amount of $48,053,135.06, plus an additional $6,864,733.58 for each day that the Answer to Complaint is not filed.

107.    Remember, even if the Court wishes to reject the suggested sanctions, the Court MUST issue SOME sanctions, because they are mandatory under the circumstances, and Plaintiff is flatly entitled – under 28 USC § 1927 – to the sanction requested in ¶ 86 of this Brief.

WHEREFORE, premises considered, Plaintiff respectfully prays that the Motion for Sanctions be granted, that the requested sanctions ensue, that costs incurred be awarded, and that the Court award any other relief that it deems appropriate.

So requested on this, the 12th day of June, 2014.

David Stebbins
123 W. Ridge St.,
APT D
Harrison, AR 72601
870-204-6516
stebbinsd@yahoo.com

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on June 17, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and I caused a copy of the foregoing Brief in Support of Motion for Sanctions to be served upon Defense Counsel Regina Haralson by allowing her to view the ECF update, pursuant to AR Local Rule 5.2.

David Stebbins
123 W. Ridge St.,
APT D
Harrison, AR 72601
870-204-6516
stebbinsd@yahoo.com